2023 IL App (1st) 221197

FIFTH DIVISION
May 5, 2023

No. 1-22-1197

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| REVERSE MORTGAGE FUNDING, LLC, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16 CH 4558 |
| LAMAR T. CATCHINS; DENISE CHRISTOPHER; TYRONE CHRISTOPHER; STEPHEN TOLIVER; IRA D. WOODY III; EDWARD TEYSHAWN WOODY; ERMETIA A. WOODY-OWEN; TYRONE LOGAN, Independent Administrator of the Estate of Ida Christopher, a/k/a Ida M. Christopher, Deceased; THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT; UNKNOWN HEIRS AND LEGATEES OF IDA CHRISTOPHER, a/k/a Ida M. Christopher, Deceased; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | Honorable Edward Robles, |
| (Tyrone Christopher and Tyrone Logan, Defendants-Appellants). | ) | Judge Presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion. Justices Mitchell and Lyle concurred in the judgment and opinion.

**OPINION**

¶ 1                                   BACKGROUND

¶ 2     This is a mortgage foreclosure case involving a deceased mortgagor. The administrator of the mortgagor's estate and one of her heirs pleaded an affirmative defense that the mortgagor was mentally incompetent to execute the mortgage documents due to her dementia. The circuit court struck the affirmative defense. They appeal that order, the order of foreclosure and sale, and the order approving the judicial sale of the property. We reverse the circuit court's order striking the affirmative defense, vacate the orders of foreclosure and sale and approving the judicial sale of the property, and remand for further proceedings.

¶ 3     In 1964, Ida Christopher and her husband purchased a home on the west side of Chicago. After the husband's death, Ida continued residing at the home. She died on July 24, 2015.

¶ 4     In 2014, a year before her death, Ida signed a reverse mortgage on the property with Maverick Funding Corporation as mortgagee, in the face amount of $232,500. The mortgage was later assigned to Reverse Mortgage Funding LLC (Reverse Mortgage), the plaintiff-appellee herein. Ida's signatures on the copies of the mortgage and note in the record show that she struggled to even sign her name.

¶ 5     Shortly after her death, Reverse Mortgage filed this mortgage foreclosure lawsuit against Ida and various subordinate lienholders pursuant to section 15-1504(a) of the Code of Civil Procedure (Code) (735 ILCS 5/15-1504(a) (West 2014)).

¶ 6      The process server reported that he had duly served Ida on April 1, 2016, by serving Ida's daughter at the subject property. The return of service does not reflect that Ida was deceased, nor that the daughter informed the process server of her mother's death. Unusually, Reverse Mortgage's foreclosure complaint did not allege that the loan had become delinquent because of nonpayment. Rather, it nonsensically claimed that under the mortgage's acceleration clause, "the Mortgagor [was] in default as of October 2015 under the terms and the condition of the Mortgage and Note for failure to occupy the property." The complaint alleged that Ida was still the sole owner of the property and did not refer to her death.

¶ 7      Ida's son, Tyrone Christopher, appeared in the circuit court on Ida's case, and the court referred him to a legal service agency for assistance. The agency declined representation, and the matter was continued numerous times over the course of a year for "status of probate." Eventually, a decedent's estate was opened, and an individual named Tyrone Logan was appointed as independent administrator of Ida's estate.

¶ 8      Reverse Mortgage then filed an amended complaint, which is the operative complaint for the purpose of this appeal. The amended complaint named as defendants Tyrone Logan, in his capacity as administrator of Ida's estate; Tyrone Christopher and his siblings, nieces, and nephews, as putative heirs; and various subordinate lienholders. Tyrone Christopher and Tyrone Logan appeared through a private law firm that represents them *pro bono*. These defendants[1] moved to dismiss the amended complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)). In their motion, they essentially argued that Reverse Mortgage's claim was untimely. After briefing, the circuit court denied the motion.

---

[1]Because Tyrone Logan and Tyrone Christopher were the only active defendants, we will refer to them by that title. The remaining defendants did not participate in the case and were eventually defaulted.

¶ 9 The defendants filed an answer and a single affirmative defense, alleging that Ida did not have the mental capacity to enter into the reverse mortgage contract. Reverse Mortgage moved to strike the affirmative defense, arguing that it was insufficiently pleaded. On September 24, 2019, the circuit court struck the original affirmative defense, but granted the defendants leave to replead it within 60 days.

¶ 10 On November 20, the defendants moved for additional time to file an amended answer and affirmative defenses. Two days later, Reverse Mortgage filed a complete summary judgment packet, requesting a judgment of foreclosure and sale and other relief pursuant to section 15-1506 of the Code (*id.* § 15-1506). Included with the packet was a copy of a November 12, 2015, letter from Reverse Mortgage to Ida (who was already deceased at the time), admonishing her that the loan was in default because of her nonoccupancy.

¶ 11 On December 13, the defendants filed an amended answer and an affirmative defense. The amended affirmative defense reads in full:

"1. On May 29, 2014, Ida M. Christopher ("Ms. Christopher") was treated by Dr. Alan M. Wilson from Advocate Medical Group. In his notes from that visit, Dr. Wilson wrote that Ms. Christopher was experiencing '[o]bvious significant deficits in recent memory.'

2. Dr. Wilson diagnosed Ms. Christopher with '[p]rimary degenerative dementia of Alzheimer type.'

3. At the end of his notes from the May 29, 2014 visit, Dr. Wilson stated that Ms. Christopher's '[o]verall picture [is] consistent with the onset of [Alzheimer's] dementia,' and he developed a treatment plan consistent with that diagnosis, though he noted that her dementia was 'progressive' and 'untreatable'.

4. The Mortgage was executed on June 27, 2014, nearly one month after Ms. Christopher had been initially diagnosed with dementia.

5. Under Illinois law, it is well established that in order to have the requisite capacity to enter into a contract, one must have sufficient mental ability to appreciate the effect of what he or she is doing.

6. Ms. Christopher, who was diagnosed with dementia prior to executing the Mortgage, could not appreciate the effect of what she was doing when she executed the Mortgage; therefore, she did not have the requisite mental capacity to execute the Mortgage."

¶ 12    On December 16, the court entered an order over Reverse Mortgage's objection, granting the defendants leave to file the amended affirmative defense and deeming the amended defense on file to be timely. In the same order, the court set a briefing schedule on Reverse Mortgage's motion for summary judgment. However, at that stage of the case, Reverse Mortgage had not yet answered or pleaded to the amended affirmative defense as required by section 2-602 of the Code, which states in part: "If new matter by way of defense is pleaded in the answer, a reply shall be filed by the plaintiff ***." 735 ILCS 5/2-602 (West 2018).

¶ 13    Three days later, during the time allotted for the defendants to respond to the summary judgment motion, Reverse Mortgage moved to strike the amended affirmative defense pursuant to section 2-615 of the Code (*id.* § 2-615). The motion relied solely on section 11a-22 of the Probate Act of 1975 (755 ILCS 5/11a-22 (West 2020)), which provides that a contract entered into by a person who has been adjudicated as incompetent is void against that person and her estate. Defendants argued that because Ida had never been adjudicated incompetent by a court, nor had a court-appointed guardian administering her affairs, the defense was insufficient at law. On January

5

8, 2020, the court set a new briefing schedule under which the defendants could respond to both the motion for summary judgment and motion to strike affirmative defenses on the same day, February 3, 2020.

¶ 14   The defendants filed separate, but similar, responses to Reverse Mortgage motions to strike the amended affirmative defense and for summary judgment. In their responses, the defendants presented new factual materials as exhibits. These materials included an affidavit from Tyrone Christopher stating that when he lived at the subject property with his mother, she was approached by an individual named Mark who was working for Reverse Mortgage's predecessor in interest. Mark visited Ida and urged her to sign a reverse mortgage to help pay her debts and obtain money to rehabilitate the building. Although Tyrone Christopher told Mark that his mother was not competent to sign any contracts due to her "severe dementia," she signed the mortgage documents anyway, at Mark's behest. Mark told Tyrone Christopher that he was "irrelevant."

¶ 15   Tyrone Christopher's affidavit was a copy of an original he submitted in support of an earlier consumer fraud lawsuit filed by the Illinois Attorney General against an individual named Mark Diamond and several companies. In that litigation, the circuit court of Cook County granted summary judgment to the State, finding, among other things, that Diamond engaged in both "unfair or deceptive acts and practices" and "in the deceptive conduct of using a fake home repair company as a means of extracting a consumer's home equity." The same court later entered a $51,500 restitution judgment in favor of Ida and against Diamond. *People v. United Construction of America, Inc.*, No. 09-CH-33398 (Cir. Ct. Cook County, Jan. 22, 2016); *People v. United Construction of America, Inc.*, No. 09-CH-33398 (Cir. Ct. Cook County, July 11, 2016).

¶ 16   In summary, the defendants argued both that the amended affirmative defense was sufficiently pleaded and that Tyrone Christopher's affidavit, together with the other factual

materials, created a genuine issue of material fact sufficient to defeat summary judgment on the issue of Ida's competence to validly sign the reverse mortgage contract.

¶ 17    After further briefing, the court entertained arguments on the motions. The defendants requested time to conduct discovery, but the court found that the defendants' failure to file an Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013) affidavit required it to deny that request. The court further expressed concern about whether a deceased contracting party could be retroactively proven to have been incompetent at the time of signing the contract, stating "I don't know how going back six years you'd ever be able to prove that she was incapacitated at this point just based on those notes." The court thus entered a judgment of foreclosure and sale and struck the affirmative defense. The order does not indicate whether the affirmative defense was stricken with leave to amend. The court also denied the defendants' motion to reconsider.

¶ 18    After considerable delays due to the COVID-19 pandemic, Reverse Mortgage purchased the property at a judicial sale for a full credit bid. The defendants made similar arguments in opposition to Reverse Mortgage's motion for confirmation of the sale as they had against summary judgment. On July 6, 2022, the court again rejected these arguments, and it entered a final judgment confirming the sale pursuant to section 15-1508 of the Code (735 ILCS 5/15-1508 (West 2020)). This appeal followed. Ill. S. Ct. R. 303(a) (eff. July 1, 2017).

¶ 19    During the pendency of this appeal, the defendants filed their appellants' brief along with an appendix as required by Illinois Supreme Court Rule 342 (eff. Oct. 1, 2019). Reverse Mortgage moved to strike the appendix on the basis that it included the following materials which were not in the record certified by the clerk of the circuit court: (1) a subpoena for Ida's medical records; (2) a signed certified mail receipt for the subpoena; (3) Ida's medical records; and (4) a June 8, 2017 letter from the United States Department of Justice to Ida, identifying her as a victim in the

federal government's criminal prosecution against Diamond (United States v. Diamond, No. 17-CR-332 (N.D. Ill.). The defendants contended that the materials were properly submitted because they were tangentially mentioned in other documents already in the record. The designated motion justice ordered that the motion be taken with the case. Upon review of the record, we find that the subpoena was properly included in the appendix because it appears in the record as an exhibit to a motion. We agree with Reverse Mortgage, however, that the other three documents were not presented below and therefore were not properly included in the appendix. Accordingly, we grant the motion to strike in part and deny it in part. We will not consider the signed certified mail receipt, medical records, or the Department of Justice letter in reaching our disposition.

¶ 20                                                    ANALYSIS

¶ 21    On appeal, the defendants contend that the circuit court erred in striking the amended affirmative defense, and the materials they submitted in opposition to Reverse Mortgage's motion for summary judgment were sufficient to create a genuine issue of material fact.

¶ 22    We first address the circuit court's order striking the amended affirmative defense. An affirmative defense admits the legal sufficiency of the cause of action but "asserts new matter by which the plaintiff's apparent right to recovery is defeated." *Vroegh v. J&M Forklift*, 165 Ill. 2d 523, 530 (1995) (citing *Vanlandingham v. Ivanow*, 246 Ill. App. 3d 348, 357 (1993)).

¶ 23    A defendant must state the facts establishing an affirmative defense with the same degree of specificity that is required of a plaintiff stating a cause of action. *International Insurance Co. v. Sargent & Lundy*, 242 Ill. App. 3d 614, 630 (1993). A motion to dismiss an affirmative defense pursuant to section 2-615 of the Code, like all section 2-615 motions, admits all well-pleaded facts constituting the defense and attacks only the legal sufficiency of those facts. *Id.*; 735 ILCS 5/2-615 (West 2020). If the well-pleaded facts of an affirmative defense raise the possibility that the

defendant will prevail, the court should not dismiss it. *Farmer City State Bank v. Guingrich*, 139 Ill. App. 3d 416, 422 (1985). Under section 2-612(b) of the Code, "No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." 735 ILCS 5/2-612(b) (West 2020). A court reviewing the sufficiency of an affirmative defense should disregard any conclusions of fact or law not supported by allegations of specific fact. *Hartmann Realtors v. Biffar*, 2014 IL App (5th) 130543, ¶ 20. We review a circuit court's order striking an affirmative defense on the basis of sufficiency *de novo*. *Id.*

¶ 24    As noted above, section 11a-22 of the Probate Act of 1975 (755 ILCS 5/11a-22 (West 2020)), provides that a contract entered into by a person who has been adjudicated as incompetent is void against that person and her estate. There is no dispute that, at the time she signed the mortgage, Ida had not been adjudicated as incompetent, and nothing in the record suggests that she was later so adjudicated. However, Illinois common law recognizes incapacity due to mental impairment as a valid defense to a contract claim. Over a century ago, our supreme court acknowledged that a complainant must "[S]how that the grantor was not mentally capable of making the deeds sought to be set aside" but that "old age, eccentricity, or even partial impairment of mental faculties, is not necessarily sufficient to set aside a deed." *Campbell v. Freeman*, 296 Ill. 536, 539 (1921) (citing *Bordner v. Kelso*, 293 Ill. 175 (1920), *Crosby v. Dorward*, 248 Ill. 471 (1911), *McLaughlin v. McLaughlin*, 241 Ill. 366 (1909), *Baker v. Baker*, 239 Ill. 82 (1909), and *Sears v. Vaughan*, 230 Ill. 572 (1907)). Additionally, "mental weakness of one party to a transaction, even if it is of itself insufficient to destroy a contract will, if accompanied by undue influence, inadequacy of price, ignorance and want of advice, misrepresentation or

concealment be a basis for setting aside the agreement." *Freiders v. Dayton*, 61 Ill. App. 3d 873, 880 (1978) (citing *Fewkes v. Borah*, 376 Ill. 596, 601 (1941)).

¶ 25 The amended affirmative defense alleges that before signing the mortgage (1) Ida was diagnosed with "degenerative dementia of Alzheimer type," (2) her condition was progressive and untreatable, and (3) she could not appreciate what she was signing and thus did not have the requisite mental capacity to execute the mortgage. We find that this allegation was sufficient to withstand Reverse Mortgage's section 2-615 motion to strike. It contains the basic elements set forth in Illinois case law regarding incapacity of mentally impaired persons to contract. And, pursuant to section 2-612(b) of the Code, it "contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." Therefore, the circuit court erred in striking the amended affirmative defense.

¶ 26 We next consider the circuit court's order granting summary judgment or, stated otherwise, a judgment of foreclosure and sale. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). Summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied. *Id.* We review the circuit court's order granting summary judgment *de novo*. *Id.*

¶ 27 In the circuit court, the only evidentiary material defendants presented in opposition to summary judgment that specifically supported their affirmative defense was the recycled affidavit from Tyrone Christopher from the Attorney General's consumer fraud lawsuit. In the affidavit, he

attested that he lived with Ida when she signed the contract and that he believed she could not sign the mortgage because she was "not of sound mind" after she had been diagnosed with "severe dementia." Putting aside the obvious evidentiary deficiencies in the affidavit—the affiant's assertion regarding the physician's diagnosis was hearsay and his layman's opinion regarding Ida's capacity provides scant information regarding the depth or frequency of his observations of Ida's condition—we note that the affidavit related to a defense that had been pleaded, but not yet stricken, when the court considered whether to grant summary judgment. While the affiant is not a physician, he most certainly can opine as to his mother's mental capacity (see *In re Estate of Roeseler*, 287 Ill. App. 3d 1003 (1997)) and apparent state of health (see *People v. Botsis*, 388 Ill. App. 3d 422, 442-43 (2009)). In fact, such lay opinions may overcome an expert opinion. *People v. Coleman*, 168 Ill. 2d 509, 525-26 (1995).

¶ 28    Defendants did not present a genuine issue of material fact sufficient to overcome Reverse Mortgage's summary judgment motion. However, the court erred by striking the amended affirmative defense, which was properly pleaded, while simultaneously granting summary judgment to the opposing party. This deprived the defendants of a fair opportunity to properly frame their defense of incapacity. In fact, section 2-1005(g) of the Code requires: "[b]efore or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." 735 ILCS 5/2-1005(g) (West 2020). An affirmative defense is a "pleading" within the scope of the Code. *Id.* §§ 2-603(a), 2-613(a).

¶ 29    Accordingly, we vacate the orders granting summary judgment and a judgment of foreclosure and sale to Reverse Mortgage and remand for the circuit court to provide the defendants an opportunity to pursue their defense and allow them to plead a counterclaim for recission, which is the customary remedy for parties challenging the validity of a contract. It

necessarily follows that because we have reversed the orders striking the affirmative defense, and vacated the order granting a judgment of foreclosure and sale, we must also vacate the order confirming the sale.

¶ 30                                    CONCLUSION

¶ 31     In sum, we (1) reverse the judgment of the circuit court of Cook County striking the affirmative defense; (2) vacate the orders of summary judgment, foreclosure, and sale; (3) vacate the order confirming sale; and (4) remand with directions as specified herein. In regard to the motion to strike taken with the appeal, we grant in part and deny in part.

¶ 32     Reversed in part and vacated in part; cause remanded.

---

*Reverse Mortgage Funding, LLC v. Catchins*, **2023 IL App (1st) 221197**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CH-4558; the Hon. Edward Robles, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Joseph L. Motto and Thomas J. Neuner, of Winston & Strawn LLP, of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Paul T. Massey, Marcos Posada, and Phil Schroeder, of McCalla Raymer Leibert Pierce, LLC, of Chicago, for appellee. |

---